SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.*

**State v. Oscar Ramirez (A-1-21) (085943)**

**Argued September 28, 2022 -- Decided November 21, 2022**

**SABATINO, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the conflicting rights of a sexual assault victim -- to decline to participate in an investigation and to enjoy solitude at home -- and a person accused of a sexual offense -- to receive an effective defense, to assert the right to confrontation and compulsory process of witnesses, and to due process -- in the context of a prosecutor's motion for a protective order relieving the prosecution of its obligation to supply a victim's residential address to defense counsel.

D.C., a twenty-three-year-old woman, was sexually assaulted shortly after midnight on October 25, 2019, in a North Bergen cemetery. The victim stated that the attacker held a box cutter to her neck and told her to be quiet or he would kill her. Based on surveillance footage collected from that night, the police identified defendant Oscar Ramirez as the attacker. The police arrested defendant, who had previously been convicted of two assaults that arose out of initial charges of alleged sexual contact. Defendant gave a statement in which he denied -- without being asked about the attack -- having committed "the rape" but identified himself as the man shown in the surveillance footage and stated that he had previously killed people. Laboratory results matched defendant's DNA to swabs taken from the victim, and defendant was charged with multiple offenses related to the incident.

When supplying pretrial discovery to defense counsel, the prosecution redacted the address where the victim lived at the time of the offense and also declined to provide the new address to which she moved after the attack. To justify withholding that information, the prosecution moved for a protective order under Rule 3:13-3(e) and submitted a sworn certification from an assistant prosecutor asserting that the victim did not want her address to be provided to the defense, that she was afraid defendant or someone close to him would locate her, and that she did not want to speak to the defense before trial. Defense counsel opposed the motion, arguing that Rule 3:13-3(e) required the prosecution to provide the victim's contact information to the defense, even if defendant himself is not allowed to have access.

1

The motion judge granted the prosecutor's motion in part, ordering that the address be disclosed to defendant's counsel, who would not be permitted to disclose any of the information to the defendant. Notably, the judge's written decision did not discuss the statutory or constitutional rights of sexual assault victims, beyond citing the Court's recognition in State v. R.W., 104 N.J. 14, 28 (1986), that there is a "heightened need to protect victims from trauma and intimidation in sexual assault cases." More specifically, the judge did not cite to the Victim's Rights Amendment, the Crime Victim's Bill of Rights, or the Sexual Assault Victim's Bill of Rights. The Appellate Division reversed, stressing that "to permit defense investigators to access the victim's home, against her expressed instructions," would violate her right to privacy. 467 N.J. Super. 359, 369 (App. Div. 2021). The Court granted leave to appeal. 248 N.J. 252 (2021)

**HELD:** After reviewing the relevant statutes and authorities that must be considered in balancing the competing interests and rights of a sexual assault victim and the person accused of the sexual offense, the Court sets forth a framework of procedures and considerations to apply going forward when a prosecutor seeks to withhold from discovery a sexual assault victim's address. Because neither the ruling of the trial court nor that of the Appellate Division sufficiently addresses the competing interests explored in the Court's opinion, the Court remands the matter for a more fulsome balancing of the competing interests.

1. Rule 3:13-3 governs the prosecution's general discovery obligations and the contested motion for a protective order in this case. Under Rule 3:13-3(a) and (b)(1), once an indictment has issued, a defendant has a right to automatic and broad discovery of the evidence the State has gathered in support of its charges. Reciprocally, under Rule 3:13-3(b)(2), defense counsel must supply the prosecution with similarly broad categories of items. Rule 3:13-3(b)(1)(F) specifically imposes upon the prosecutor an obligation to provide a defendant post-indictment with a witness's address. Nevertheless, criminal discovery has its limits, and information must be shown to be relevant to the issues in the case in order to be subject to disclosure. Another important limit on a defendant's right to discovery is the chilling and inhibiting effect that discovery can have on material witnesses who are subject to intimidation, harassment, or embarrassment. Rule 3:13-3(e) details how the prosecution may obtain a protective order from the court, allowing it to withhold from the defense certain discovery that otherwise would be mandated. A trial court considers "the totality of the circumstances" in determining whether good cause exists to grant the motion. One factor the court may consider when evaluating good cause is the "protection of witnesses and others from physical harm [and] threats of harm"; another is "confidential information recognized by law." R. 3:13-3(e)(1). Appellate courts defer to a trial court's ruling on a motion for a protective order unless the trial court abused its discretion or its determination is based on a mistaken understanding of the applicable law. (pp. 15-21)

2

2.  The Court reviews in detail the legislative enactments, constitutional amendment, and court rules that afford enhanced protections to sexual assault victims and other crime victims in New Jersey.  Together, the authorities reviewed by the Court reflect a robust codified public policy to protect sexual assault victims in this State from undue incursions upon their rights of privacy and solitude and the Legislature's recognition that victims can re-experience trauma each time they discuss the violent incident.  (pp. 21-28)

3.  Weighing against those important rights of a victim are the countervailing rights of a person accused of a criminal offense, protected expressly or impliedly by the federal and New Jersey Constitutions and decades of jurisprudence.  Conceptually, they encompass the rights (1) to the effective assistance of counsel in defending the case, (2) to confront the prosecution's witnesses at trial and to have the compulsory process of exculpatory witnesses, and (3) to due process.  The Court reviews the nature and scope of each of those rights.  Significantly, the right to the effective assistance of counsel in a criminal proceeding includes the right to conduct a reasonable investigation to prepare a defense, but that right is not absolute and has been balanced in case law against the victim's privacy rights.  The constitutionally granted right to compulsory process permits a defendant to call and examine witnesses as part of the defense, and the Supreme Court of the United States has recognized that asking a witness during cross-examination where that witness lives is important to the exercise of the related right of confrontation.  Again, however, those rights are not absolute, and trial judges have discretion to limit cross-examination if it invades the witness's constitutional rights or merely seeks to harass, annoy, or humiliate the witness.  Finally, the Due Process Clause gives defendants the right of access to adverse witnesses during the investigation phase of the defense.  State v. Blazas, 432 N.J. Super. 326, 340 (App. Div. 2013).  Even so, because a witness has the "absolute and personal right to either grant or deny" a pretrial interview, "the protected [due process] right is the opportunity for pretrial access; it is not a guarantee of pretrial access."  See id. at 343-46.  A witness's decision must be a personal one, however; any prosecutorial "interference with a witness's decision to grant or deny an interview to the defense . . . deprives a defendant of his right to present a complete defense."  Id. at 343.  (pp. 28-35)

4.  Relying on principles distilled from the authorities reviewed, the Court holds that, going forward, certain procedures and considerations apply when a prosecutor seeks to withhold from discovery a sexual assault victim's address:

The prosecution must move for a protective order under Rule 3:13-3(e).  The motion must be supported by a sworn statement from the victim attesting the victim does not want the address disclosed to the defendant or defense counsel.  If such a motion is filed, the defense may file a response with the court expressing reasons

3

why a protective order should be denied and, in particular, why the defense needs the victim's address. The trial court may permit a reply by the prosecutor.

If the defense asserts it wants the address, among other things, for the purpose of contacting and interviewing the victim, the court shall then consider various "supervised pathway" options designed to assure that the victim's decision is personal and also that the victim has been made aware of the defense's reasons for wanting the address and to make contact. The supervised pathway options include, but are not limited to, a written request by the defense that the court may permit to be conveyed to the victim through the prosecutor or court staff; an in camera interview of the victim by the judge; a limited call between defense counsel and the victim; or another court-devised option that would fairly balance the victim's rights to refrain from participation against the defendant's rights to prepare a defense.

After implementing one or more of those options, the court shall rule on whether good cause for a protective order has been shown, and, if so, what court-imposed restrictions or conditions shall be observed. In fashioning a protective order, the trial court shall accord heavy weight to the victim's interests in having solitude and privacy at that victim's residence in the wake of a highly traumatic experience. The home can be a place of refuge for a victim, and the Court's jurisprudence has long respected the heightened protections of privacy and solitude in one's dwelling.

Accordingly, there shall be a presumption that, if the defense is allowed by the court to obtain the address, its investigators shall not appear at the victim's residence without the victim's advance consent and court approval. In the rare instance in which the court finds the presumption is overcome, it shall specify within the protective order reasonable limitations on the time, place, and manner of such at-home contact. (pp. 35-41)

5. So that the process outlined in this opinion may be implemented in this case, the Court remands the matter and provides guidance for the proceedings on remand. The Court expresses no view, however, of the facts of this case or how the trial court should rule on remand. (pp. 41-42)

**The judgment of the Appellate Division is VACATED. The matter is REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and FASCIALE; and JUDGE FISHER (temporarily assigned) join in JUDGE SABATINO's opinion.**

4

SUPREME COURT OF NEW JERSEY
A-1 September Term 2021
085943

State of New Jersey,

Plaintiff-Respondent,

v.

Oscar Ramirez,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
467 N.J. Super. 359 (App. Div. 2021).

Argued
September 28, 2022

Decided
November 21, 2022

Rochelle Watson, Deputy Public Defender II, argued the
cause for appellant (Joseph E. Krakora, Public Defender,
attorney; Rochelle Watson, of counsel and on the briefs,
and Nakea J. Barksdale, Assistant Deputy Public
Defender, on the briefs).

John R. Mulkeen, Assistant Prosecutor, argued the cause
for respondent (Esther Suarez, Hudson County
Prosecutor, attorney; Erin M. Campbell, Assistant
Prosecutor, on the briefs).

Alexander Shalom argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (American
Civil Liberties Union of New Jersey Foundation and
Rutgers Constitutional Rights Clinic Center for Law &
Justice, attorneys; Alexander Shalom and Jeanne

LoCicero, of counsel and on the brief, and Ronald K. Chen, on the brief).

Joshua P. Law argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; CJ Griffin, on the brief).

Sarah D. Brigham, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Acting Attorney General, attorney; Sarah D. Brigham, of counsel and on the brief).

---

JUDGE SABATINO (temporarily assigned) delivered the opinion of the Court.

---

In this appeal, we consider the conflicting rights of a sexual assault victim -- to decline to participate in an investigation and to enjoy solitude at home -- and a person accused of a sexual offense -- to receive an effective defense, to assert the right to confrontation and compulsory process of witnesses, and to due process. Specifically, we ponder these issues in the context of a prosecutor's motion under Rule 3:13-3(e) for a protective order relieving the prosecution of its obligation under subsection (b) of that rule to supply a victim's residential address to defense counsel.

We hold that the resolution of such motions requires careful judicial oversight and a sensitive balancing of the competing interests. To guide that process, we provide a gloss to Rule 3:13-3 to ensure that a defendant's counsel

2

and agents do not have unfettered access to a sexual assault victim's home address through pretrial discovery, while also requiring the trial court to consider, in its discretion, judicially supervised "pathways" for: (1) conveying to the victim the defense's reasons for seeking to contact the victim; and (2) verifying that, after being neutrally informed of those reasons, the victim still declines to be interviewed or to participate in the defense's investigation.

Because neither the ruling of the trial court nor that of the Appellate Division in this case anticipated such guidance or fully addressed the competing interests at stake, we vacate their decisions and remand for further proceedings.

## I.

## A.

We briefly summarize the facts that provide the backdrop to this discovery dispute, mindful they have not yet been established at a trial.

In the late evening hours of October 25, 2019, D.C.,[1] a twenty-three-year-old woman, was walking home from her shift as a waitress at a restaurant in North Bergen. Shortly after midnight, a man approached D.C. and grabbed her. He held a box cutter to her neck and told her to be quiet or he would kill

---

[1] We use initials for the alleged sexual assault victim to protect her privacy. See R. 1:38-3(a)(6), (12). We generally will refer to her as "the victim."

her.  He forced her into a nearby cemetery, removed all her clothing, and sexually assaulted her in multiple ways.  The man reiterated to the victim to be quiet, or he would kill her.

When the attacker heard police sirens, he pulled up his pants, told the victim to count to twenty, stole her purse and phone, and left.  The victim believed the man had ejaculated without wearing a condom because he wiped his penis with his clothing before leaving.  She fled from the cemetery in her underwear, holding her clothes.  She flagged down a couple driving by for help, and they took her to the North Bergen Police Department.

At 4:15 a.m., a nurse examined the victim using a rape kit.  The victim described her attacker to the nurse as "short, Hispanic, white skin, beard, long hair, loose big eyes."  She also stated he was "approximately five feet, four inches tall, wearing a dark sweatshirt, pants and . . . a cross body backpack." She reported that he smelled of alcohol.

Local surveillance footage from that night showed a man getting a haircut at a nearby barber shop, going to a bar or club, and then following another woman before losing track of her.  The footage later showed the same man following the victim on the street.  At 12:13 a.m., the video showed the victim leaving the cemetery, clutching her clothes.  The man appears on the

4

video walking on a nearby street at 12:30 a.m.  The footage did not show the alleged sexual assault.

Based on information from an employee who worked at the barber shop depicted in the footage, the police identified the man in the video as defendant Oscar Ramirez, who resided in North Bergen.

The police learned that defendant had previously been convicted of two assaults that arose out of initial charges of alleged sexual contact. Specifically, in October 2017, after being charged with aggravated sexual assault with a weapon, defendant was convicted of third-degree aggravated assault.  In May 2018, after being charged with criminal sexual contact, defendant was convicted of simple assault.

The police arrested defendant.  Apparently without being asked about the alleged attack, defendant gave a statement to the police in which he denied committing what he termed "the rape of a girl."  A police officer responded, "I didn't mention anything about the rape of a girl."  Defendant explained that his father had told him about a rape in North Bergen.  Defendant added that if he had done something to a woman, he did not remember it because he was under the influence of alcohol and drugs.  Defendant denied that he had been in the cemetery.

5

Despite his denials, defendant did identify himself to the police as the man shown in the surveillance footage. He also referred to himself as a "bad person." He admitted, without specifics, to previously "killing people in Mexico." When asked what he would say to the victim if she were present, defendant told the detective that he would apologize. Defendant has been confined in pretrial detention since his arrest.

Laboratory results thereafter matched defendant's DNA to swabs taken from the victim's external genitalia and underwear on the night of the assault.

A Hudson County grand jury charged defendant with kidnapping, aggravated sexual assault, armed robbery, possession of a weapon for an unlawful purpose, unlawful possession of a weapon, aggravated criminal sexual contact, and terroristic threats.

B.

When supplying pretrial discovery to defense counsel, the prosecution furnished the victim's name and date of birth, as well as a search reflecting that the victim had no prior criminal history of arrests. However, the prosecution redacted from the supplied materials the address where the victim lived at the time of the offense. According to the prosecution, the victim moved to a different residence after the attack, and she provided an updated

6

home address to the prosecutor's office.  The prosecution also did not provide the new address to defense counsel.

To justify withholding the victim's former and current addresses, the prosecution moved for a protective order under <u>Rule</u> 3:13-3(e).  The prosecution submitted a sworn certification from an assistant prosecutor in support of the motion.  His certification asserts, in relevant part, that

> [v]ia a Zoom conference on September 17, 2020, Victim told the undersigned and [an agent within the Prosecutor's Office] that she does not want her address information provided to the defense.  She is afraid that Defendant or someone close to him would be able to locate her.  Moreover, she also stated she does not want to speak to the Defense before trial about the case, including in-person, by telephone or by video conference.  The undersigned told her this decision was her choice, not the decision of the Prosecutor's Office.

Other than the certification, the record contains no documents memorializing the Zoom call between the prosecutor's office and the victim.  Notably, the prosecution did not provide a statement signed or attested to by the victim herself with its motion.  The prosecution served the motion and supporting certification on defense counsel, who filed opposition.

In oral argument on the motion, the prosecutor asserted that this case -- one in which defendant reportedly made threats to kill the victim and admitted to killing people in the past -- is particularly egregious and justifies a

protective order. The prosecutor specifically represented that some victims have told him in previous cases that defense investigators have come to their homes and claimed they work for "the State" without explaining they work for the public defender.

Defense counsel responded that Rule 3:13-3(e) required the prosecution to provide the victim's contact information. Counsel asked that, at the very least, the defense team, including professional investigators, be given access to the victim's contact information, even if defendant himself is not allowed to have access. Defense counsel urged that his investigators be allowed to knock on the victim's door, explain what their purpose is, and let the victim decide whether she wants to talk to them. He maintained that his investigators are professional, always identify themselves as working for the defendant, try only to get information, and do not intimidate or harass victims. Counsel further assured that if his investigators call the victim and she declines to speak, that choice would be honored.

The motion judge granted in part and denied in part the prosecution's motion. Specifically, the judge "order[ed] the [prosecution] to provide

defendant's counsel with [the] victim's contact information[2] and counsel and his investigatory team to not disclose any of the information to defendant."

The motion judge acknowledged the prosecution's contention that a protective order would "ensure [the] victim's physical safety and keep her free from intimidation."  The judge also noted the defense's counterargument that the defense team should have the victim's address to exercise defendant's own constitutional rights, "so that [his counsel and investigators] may contact [the] victim and effectuate effective assistance of counsel."  The judge stated that the court must "assess the reasonableness of any intimidation [the victim] may feel" and balance "the victim's physical safety" and "subjective fears" against "defendant's Constitutional rights."

The judge specifically found that the victim's concerns about defendant personally learning of her address were "objectively reasonable," given what he termed the "heinous" facts of this case.  The judge further noted the victim "could potentially be in danger if defendant knew her address."  He added, "[a]lthough defendant is currently incarcerated, there is a potential danger that if he desired to harm or intimidate the victim he could enlist others to do so if he knew her contact information."

---

[2]  Although the opinion used the phrase "contact information," the trial court's statement of the issue, the record, and the parties' briefing all reflect that the only information in dispute before us is the victim's home address.

Even so, the judge also recognized that a criminal defendant's constitutional rights to confront his accuser, to compulsory process, to prepare a defense, and to the effective assistance of counsel "encompass access to a witness during the investigatory phase of a case," relying on State v. Blazas, 432 N.J. Super. 326, 339 (App. Div. 2013). That recognition led the judge to authorize the victim's address to be divulged, but only to defendant's attorney and investigators, and to prohibit them from disclosing the address to their client.

The judge reasoned that although partial release of the victim's address to the defense team "may not entirely relieve her subjective fears," defendant was incarcerated, defense investigators are trained to identify themselves, and the defense team had represented that it would not coerce or intimidate the victim. He added that when the defense team contacts her, the victim can still decline to speak with them. Thus, the judge concluded that the release of the victim's address to only defense counsel and defense investigators struck a proper balance between defendant's constitutional rights to contact a witness and the victim's "physical safety."

Notably, the judge's written decision did not discuss the statutory or constitutional rights of sexual assault victims, beyond citing the Court's recognition in State v. R.W., 104 N.J. 14, 28 (1986), that there is a "heightened

10

need to protect victims from trauma and intimidation in sexual assault cases."
More specifically, the judge did not cite to the Victim's Rights Amendment
(VRA), N.J. Const. art. I, ¶ 22; the Crime Victim's Bill of Rights (CVBR),
N.J.S.A. 52:4B-34 to -38; or the Sexual Assault Victim's Bill of Rights
(SAVBR), N.J.S.A. 52:4B-60.2, provisions which we will discuss below.

The prosecutor requested that the trial court stay its order pending an
interlocutory appeal, which the court denied. The Appellate Division then
granted the prosecutor leave to appeal the portion of the protective order that
required disclosure of the address to the defense team and issued a
corresponding stay.

C.

The Appellate Division reversed the trial court in a published decision.
See State v. Ramirez, 467 N.J. Super. 359 (App. Div. 2021). The Appellate
Division held that the prosecutor's motion should have been granted in full,
keeping the victim's address totally confidential from both defendant
individually and the defense team. Id. at 363. The appellate court reasoned
that because the trial court failed to adequately consider sexual assault victims'
rights under the VRA and the victim-related statutes, the trial court's partial
denial of the protective order amounted to an abuse of discretion, warranting
reversal. Id. at 363, 369.

Among other things, the Appellate Division noted that "[o]ur Supreme Court has long recognized that 'criminal discovery has its limits . . . [and courts must prevent] the chilling and inhibiting effect that discovery can have on material witnesses who are subjected to intimidation, harassment, or embarrassment.'" Id. at 368 (omission and second alteration in original) (quoting State v. D.R.H., 127 N.J. 249, 256 (1992)). Based on its interpretation of the SAVBR, the Appellate Division held that the motion judge and defendant "mistakenly create[d] an irreconcilable conflict" between a defendant's right to confront an accuser and a victim's right to choose whether to participate in an assault investigation under the SAVBR. Id. at 366-67. The appellate court stated that the trial court's "untenable 'compromise' protective order . . . left the victim unprotected and exposed to the very trauma she desperately sought to avoid." Id. at 367.

The Appellate Division expressly linked the defense's desire for the victim's residential address to an anticipated effort to contact her at her home and persuade her to take part in an interview. As the court explained:

> Defendant's right to access the physical evidence the State has in its possession related to this case remains inviolate. However, to permit defense investigators to access the victim's home, against her expressed instructions, would directly violate the Constitutional protections of the CVBR, the public policy established by the Supreme Court in D.R.H., 127 N.J. at 256, and

12

the protection codified by the Legislature in [the SAVBR,] N.J.S.A. 52:4B-60.2(c)(7). In sharp contrast to State v. Scoles, 214 N.J. 236 (2013), in which, over the State's objections, the Court established a carefully drafted protocol to permit the defense team access to highly sensitive evidence, this case involves only honoring and preserving the privacy of a sexual assault victim. Neither defense counsel nor any person associated with the defense team has the right to violate a crime victim's right to privacy.

[Id. at 369 (emphases added).]

Defendant moved for leave to appeal, which we granted, although we denied his motion to stay the Appellate Division's judgment. 248 N.J. 252 (2021). We also granted motions to appear as amici curiae by the Attorney General, the Association of Criminal Defense Lawyers of New Jersey (ACDL), and the American Civil Liberties Union of New Jersey (ACLU).

II.

Defendant, the ACDL, and the ACLU all argue that the Appellate Division's opinion unfairly curtails an accused's constitutionally protected ability to develop an effective defense of the case. They urge the reinstatement of the trial court's decision allowing the release of the victim's address to the defense team (but not to defendant himself). They argue the ruling is a sound compromise and not an abuse of the trial court's discretion over criminal discovery matters.

13

These advocates maintain the Appellate Division's prohibition on disclosure is overbroad and excessively protective of the victim's interests to the detriment of defendant's constitutional rights. They assert the Appellate Division unfairly assumed that defense attorneys or investigators are prone to act unprofessionally by harassing victims at their addresses and failing to honor victims' right to decline to participate in interviews or investigations. Defendant and the ACLU further criticize the hearsay nature of the prosecutor's motion certification, contending it is insufficient to establish the victim's personal reasons for opposing disclosure and to substantiate "good cause" for relief under Rule 3:13-3(e).[3]

The prosecutor and the Attorney General, meanwhile, urge that we affirm the Appellate Division's opinion. They argue the appellate court's decision appropriately enforces the right of a sexual assault victim to decline to be interviewed by the defense or otherwise participate in an investigation.

---

[3] The ACLU's amicus brief advances a new argument that was not raised in either the trial court or the Appellate Division. The ACLU contends that a victim's home address can be "essential" to the criminal defense team as an investigative tool, independent of a desire to interview the victim. Specifically, the ACLU asserts that witnesses' home addresses are commonly used for searching public information databases and social media sites; conducting background checks; identifying aliases; pulling Motor Vehicle Commission records, criminal history records, and credit history records; discovering legal and financial conflicts; and uncovering relationships to others in the case. After receiving the ACLU's amicus brief, defendant adopted this new argument in a supplemental brief.

14

They stress the post-event mental anguish and fear that is commonly experienced by victims of violent crimes, especially persons who have been sexually assaulted.

The prosecutor and the Attorney General maintain the defense can conduct a sufficient pretrial investigation and mount a vigorous defense without depending on the prosecution to disclose the victim's home address. As a procedural matter, they contend the prosecutor's motion certification in this case complied with Rule 3:13-3(e)(2), which requires good cause to be shown only "in the form of a written statement," and which does not require that statement to be sworn or attested to directly by a victim. They further argue that such "good cause" is manifest in this case. In this regard, they underscore the brutal nature of this sexual assault, defendant's threats to kill the victim if she sought help, his claim to the police that he had previously committed murders, his criminal record, and the victim's decision to move to a new address after the attack.

III.

A.

We begin our analysis with an examination of Rule 3:13-3, the court rule that governs the prosecution's general discovery obligations and the contested motion for a protective order in this case.

As codified in <u>Rule</u> 3:13-3, New Jersey has a tradition of what is often described as an "open file" model of reciprocal pretrial criminal discovery. "Our courts do not countenance trial by surprise." <u>State in Int. of A.B.</u>, 219 N.J. 542, 555 (2014). "To advance the goal of providing fair and just criminal trials, we have adopted an open-file approach to pretrial discovery in criminal matters post-indictment." <u>Scoles</u>, 214 N.J. at 252. Thus, criminal defendants are "'entitled to broad discovery'" because it "advances the quest for truth." <u>Ibid.</u> (quoting <u>D.R.H.</u>, 127 N.J. at 256).

Under <u>Rule</u> 3:13-3(a) and (b)(1), "[o]nce an indictment has issued, a defendant has a right to automatic and broad discovery of the evidence the State has gathered in support of its charges." <u>Ibid.</u> (citing <u>R.</u> 3:13-3); <u>see also</u> <u>A.B.</u>, 219 N.J. at 555 (calling <u>R.</u> 3:13-3(b) the "automatic discovery provision").

The automatic discovery model is "intended to speed up the discovery process." Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 3.1 on <u>R.</u> 3:13-3 (2022). "The onus is on the State" to make the discovery available to the defendant. <u>Scoles</u>, 214 N.J. at 253. Reciprocally, under <u>Rule</u> 3:13-3(b)(2), defense counsel must supply the prosecution with similarly broad categories of items.

16

Rule 3:13-3(b)(1)(F) specifically imposes upon the prosecutor an obligation to provide a defendant post-indictment with a witness's address:

> Discovery shall include exculpatory information or material. It shall also include, but is not limited to, the following relevant material:
>
> . . .
>
>> (F) names, addresses, and birthdates of any persons whom the prosecutor knows to have relevant evidence or information including a designation by the prosecutor as to which of those persons may be called as witnesses.
>
> [R. 3:13-3(b)(1)(F) (emphases added).]

Nevertheless, despite a criminal defendant's general and automatic right to "broad discovery," including witnesses' addresses under Rule 3:13-3(b)(1)(F), this Court also has long held that "criminal discovery has its limits." See D.R.H., 127 N.J. at 256. Defendants are not permitted to conduct a "fishing expedition," R.W., 104 N.J. at 28, or "transform the discovery process into an unfocused, haphazard search for evidence," D.R.H., 127 N.J. at 256. Hence, information must be shown to be relevant to the issues in the case in order to be subject to disclosure. R. 3:13-3(b)(1); see State v. Desir, 245 N.J. 179, 193 (2021).

Another important limit on a defendant's right to discovery is "the chilling and inhibiting effect that discovery can have on material witnesses

17

who are subject to intimidation, harassment, or embarrassment." <u>D.R.H.</u>, 127 N.J. at 256. For instance, in <u>D.R.H.</u>, this Court held that criminal defendants do not have an unconditional discovery right to a physical examination of a child sex-abuse victim absent compelling or substantial need, because the examination may have harmful consequences for the child, including invasion of privacy, emotional trauma, and mental distress. <u>Id.</u> at 258-59. Similarly, in <u>R.W.</u>, this Court held that the invasion of a child victim's privacy outweighed the defendant's evidentiary need for a psychiatric examination. 104 N.J. at 28. More recently, we have admonished that "[c]ourts must guard against abusive discovery tactics that can have a chilling effect on the readiness of witnesses and victims to come forward and participate in the criminal justice process." <u>A.B.</u>, 219 N.J. at 557-58.

Rule 3:13-3(e), the key subsection of the rule involved in this case, details how the prosecution may obtain a protective order from the court, allowing it to withhold from the defense certain discovery that otherwise would be mandated. Subsection (e)(1) of the rule identifies the grounds for such protective relief:

> <u>Grounds</u>. Upon motion and <u>for good cause shown</u> the court <u>may</u> at any time order that the discovery sought pursuant to this rule be denied, restricted, or deferred or make such other order as is appropriate. <u>In determining the motion, the court may consider the following: protection of witnesses and others from</u>

18

physical harm, threats of harm, bribes, economic reprisals and other intimidation; maintenance of such secrecy regarding informants as is required for effective investigation of criminal activity; confidential information recognized by law, including protection of confidential relationships and privileges; or any other relevant considerations.

[R. 3:13-3(e)(1) (emphases added).]

Subsection (e)(2) of the rule then spells out procedures that a trial court may follow concerning such motions for a protective order:

Procedure. The court may permit the showing of good cause to be made, in whole or in part, in the form of a written statement to be inspected by the court alone, and if the court thereafter enters a protective order, the entire text of the statement shall be sealed and preserved in the records of the court, to be made available only to the appellate court in the event of an appeal.

[R. 3:13-3(e)(2) (emphases added).]

A trial court considers "the totality of the circumstances" in determining whether good cause exists to grant the motion. See State v. Buhl, 269 N.J. Super. 344, 356 (App. Div. 1994) (quotation omitted). One factor the court may consider when evaluating good cause is the "protection of witnesses and others from physical harm [and] threats of harm." R. 3:13-3(e)(1); see also State in Int. of N.H., 226 N.J. 242, 256 (2016) (explaining that the State may apply for a protective order to withhold materials that "would expose

19

witnesses and others to harm").  Another factor the court may consider is "confidential information recognized by law."  R. 3:13-3(e)(1).

As with other discovery matters, the scope of appellate review of protective order rulings is deferential.  "[A]ppellate courts 'generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law.'"  State v. Brown, 236 N.J. 497, 521 (2019) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (quoting Rivers v. LSC P'Ship, 378 N.J. Super. 68, 80 (App. Div. 2005))); see also A.B., 219 N.J. at 554 (similarly applying an abuse of discretion review standard).

A trial court can abuse its discretion "by failing to consider all relevant factors."  State v. S.N., 231 N.J. 497, 500 (2018).  Our appellate courts will set aside or modify such decisions if they do not comport with the applicable law or do not give sufficient regard to pertinent considerations.  See, e.g., D.R.H., 127 N.J. at 257-59 (holding the trial court "clearly erred" in its discovery order compelling, over the State's objection, the physical examination of a child sex-abuse victim, because the court applied an incorrect legal standard treating physical exams as a lesser invasion of privacy than a psychiatric exam); see also Desir, 245 N.J. at 203-09 (affirming in part and reversing in part a trial

court's exercise of discretion in denying a defendant's motion to compel discovery of confidential information, based on legal principles announced in the Court's opinion that balanced the competing interests).

B.

Here, the discovery rules must be considered in tandem with legislation devoted to the protection of crime victims. As we have already noted, the present appeal centrally involves several enactments that afford enhanced protections to sexual assault victims and other crime victims in New Jersey. Those laws reflect forceful public policies adopted by the voters and the Legislature to safeguard victims from physical and emotional harm.

"Beginning with the passage of the Criminal Injuries Compensation Act of 1971 (N.J.S.A. 52:4B-1 to -33), the people of New Jersey, speaking through the Legislature, have repeatedly expressed a very strong 'public attitude' that victims should be provided with more rights." State v. Muhammad, 145 N.J. 23, 43 (1996). Since 1971, the Legislature has enacted statutes to expand the protection and participation of crime victims in the criminal justice system. See id. at 33-35 (explaining legislation from 1971 to 1991 to increase victims' participation and rights). Those "developments reveal a steady movement [in New Jersey] law to recognize and enhance the rights of crime victims." State v. Tedesco, 214 N.J. 177, 196 (2013).

21

Most recently, and especially relevant to this case, the Legislature in 2019 unanimously passed the Sexual Assault Victim's Bill of Rights (SAVBR), N.J.S.A. 52:4B-60.2. Sections (a) and (b) of the SAVBR announce why the statute was enacted, and section (c) sets forth the codified rights of sexual assault victims:

> The Legislature finds and declares that:
>
> a. The enactment of the "Crime Victim's Bill of Rights," L. 1985, c. 249 ([N.J.S.A.] 52:4B-34 et seq.) and the "New Jersey Campus Sexual Assault Victim's Bill of Rights Act," L. 1994, c. 160 ([N.J.S.A.] 18A:61E-1 et seq.) have resulted in significant advances in the recognition and protection of the rights of crime victims and survivors once they enter the criminal justice system;
>
> b. Nonetheless, victims of sexual violence in particular often face circumstances where they may be blamed for the crime, assumed to be fabricating the crime, or taken less seriously than their injuries warrant. These victims are sometimes discouraged from proceeding with their complaints and as a result may not be afforded the protections and rights in the criminal justice system to which they are entitled;
>
> c. Therefore, with no diminution of the legislatively-recognized rights of crime victims, it is the public policy of this State that the criminal justice system accord victims of sexual violence the following rights:

. . .

> (7) <u>To choose whether to participate in any investigation of the assault</u>; [and]
>
> . . .
>
> (9) To information and assistance in accessing specialized mental health services; <u>protection from further violence</u>; other appropriate community or governmental services, including services provided by the Victims of Crime Compensation Office; and all other assistance available to crime victims under current law . . . .
>
> [N.J.S.A. 52:4B-60.2 (emphases added).]

Although the SAVBR makes clear that sexual assault victims have the right to "choose whether to participate" in "any investigation" and the right to "protection from further violence," it does not define those rights. N.J.S.A. 52:4B-60.2(c)(7), (9). The legislative history does not illuminate what the sponsors or the committee members intended by including those phrases. Nor does any published opinion other than the Appellate Division opinion we are presently reviewing.

The adoption of the SAVBR followed an extensive series of enactments in New Jersey focused on protecting the rights of crime victims. In 1985, the

23

Legislature enacted the Crime Victim's Bill of Rights (CVBR), N.J.S.A.

52:4B-36.  That statute provides in relevant part:

> The Legislature finds and declares that crime victims and witnesses are entitled to the following rights:
>
> a.  To be treated with <u>dignity and compassion</u> by the criminal justice system;
>
> . . .
>
> c.  To be free from <u>intimidation, harassment or abuse by any person including the defendant or any other person acting in support of or on behalf of the defendant</u>, due to the involvement of the victim or witness in the criminal justice process;
>
> d.  To have <u>inconveniences associated with participation</u> in the criminal justice process <u>minimized to the fullest extent</u> possible . . . .
>
> [N.J.S.A. 52:4B-36 (emphases added).]

Since its initial passage in 1985, the CVBR has been modified several times.  See <u>Tedesco</u>, 214 N.J. at 195-96 (describing the modifications).  Most notably, in 2012, the Legislature passed "Alex DeCroce's Law" to update subsection (c) and make other changes.  See <u>L.</u> 2012, <u>c.</u> 27.  Before 2012, subsection (c) provided only that victims had the right to be free from "intimidation."  <u>S. Budget & Appropriations Comm. Statement to A. 2380</u> 1 (June 18, 2012).  The 2012 amendment "expand[ed] and clarifie[d] that right,

24

to provide that victims have the right to be free from intimidation, harassment and abuse by any person, <u>including the defendant or any other person acting in support of or on behalf of the defendant</u>."  <u>Ibid.</u> (emphasis added).

Furthermore, crime victims in this State gained constitutional protection in 1991 with the ratification and adoption of the Victims' Rights Amendment (VRA), <u>N.J. Const.</u> art. I, ¶ 22.  The VRA reads, in full:

> A victim of a crime <u>shall be treated with fairness, compassion and respect</u> by the criminal justice system. A victim of a crime shall not be denied the right to be present at public judicial proceedings except when, prior to completing testimony as a witness, the victim is properly sequestered in accordance with law or the Rules Governing the Courts of the State of New Jersey. A victim of a crime <u>shall be entitled to those rights and remedies as may be provided by the Legislature</u>.  For the purposes of this paragraph, "victim of a crime" means:  a) a person who has suffered <u>physical or psychological injury</u> or has incurred loss or damage to personal or real property as a result of a crime or an incident involving another person operating a motor vehicle while under the influence of drugs or alcohol, and b) the spouse, parent, legal guardian, grandparent, child or sibling of the decedent in the case of a criminal homicide.
>
> [<u>N.J. Const.</u> art. I, ¶ 22 (emphases added).]

The VRA does not set forth all the rights of crime victims.  Rather, "it vest[s] in the Legislature the authority to specify those rights that will be afforded to victims."  <u>State v. Blackmon</u>, 202 N.J. 283, 298-99 (2010).

Pursuant to that delegated authority under the VRA, the Legislature has repeatedly adopted statutory rights specific to sexual assault victims in addition to the SAVBR. See, e.g., N.J.S.A. 18A:61E-2 (Campus Sexual Assault Victim's Bill of Rights); N.J.S.A. 2C:25-17 to -35 (Prevention of Domestic Violence Act); N.J.S.A. 2C:7-1 to -19 (Megan's Law); N.J.S.A. 2C:14-7 (Rape Shield Law); N.J.S.A. 2C:14-13 to -21 (Sexual Assault Survivor Protection Act). Further, our court rules ensure that the "[n]ames and addresses of victims or alleged victims of . . . sexual offenses" are "excluded from public access" ordinarily available for records of criminal and municipal court proceedings. R. 1:38-3(c)(12) (emphasis added).

In that same vein, N.J.S.A. 2A:82-46 prevents disclosure of certain information about child victims. That law states that, "[i]n prosecutions for . . . sexual assault . . . , the name, address, and identity of a victim who was under the age of 18 at the time of the alleged commission of an offense shall not appear on the indictment, complaint, or any other public record." N.J.S.A. 2A:82-46(a) (emphases added). The statute gives the trial court discretion to "impos[e] further restrictions with regard to disclosure of the name, address, and identity of the victim when it deems it necessary to prevent trauma or stigma to the victim." N.J.S.A. 2A:82-46(d) (emphases added).

26

Additionally, since 2007, Nicole's Law, N.J.S.A. 2C:14-12, has ensured that when a defendant charged with a sexual offense is released from custody before trial, "[t]he victim's location shall remain confidential and shall not appear on any documents or records to which the defendant has access." Id. at -12(c) (emphasis added). The statute does not mention defense counsel.

In one more example, the Sexual Assault Survivor Protection Act (SASPA), passed in 2015, is a non-penal statute that allows victims of nonconsensual sexual contact to seek a civil protective order regardless of whether criminal charges have been filed against the alleged perpetrator. N.J.S.A. 2C:14-13 to -21. SASPA provides that when a victim seeks a temporary protective order under that statute, "[t]he court shall waive any requirement that the applicant's or alleged victim's place of residence appear on the application." N.J.S.A. 2C:14-14(d) (emphases added). SASPA further states that when a victim seeks a final protective order under the statute, the court may issue

> an order prohibiting the respondent from having any contact with the victim or others, including an order forbidding the respondent from personally or through an agent initiating any communication likely to cause annoyance or alarm including, but not limited to, personal, written, or telephone contact, or contact via electronic device.
>
> [N.J.S.A. 2C:14-16(f)(2) (emphases added).]

27

All of those enactments, read in tandem with the SAVBR, reflect a robust codified public policy to protect sexual assault victims in this State from undue incursions upon their rights of privacy and solitude. The Legislature manifestly recognizes that such victims can re-experience trauma each time they discuss the violent incident.

C.

Weighing against those important rights of a victim are the countervailing rights of a person accused of a criminal offense. These are rights and interests protected expressly or impliedly by the federal and New Jersey Constitutions, and decades of jurisprudence. Conceptually, they encompass the rights (1) to the effective assistance of counsel in defending the case, (2) to confront the prosecution's witnesses at trial and to have the compulsory process of exculpatory witnesses, and (3) to due process.

1.

Both the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee a criminal defendant the right "to have the assistance of counsel for his defense." That right is essential to a fair trial. See Gideon v. Wainwright, 372 U.S. 335, 342 (1963) (holding that the federal right to assistance of counsel "is made obligatory

28

upon the States by the Fourteenth Amendment" because it is "fundamental and essential to a fair trial" (quotation omitted)).

"The right to the effective assistance of counsel in a criminal proceeding includes the right to conduct a reasonable investigation to prepare a defense." A.B., 219 N.J. at 547. Under a defense counsel's duty to investigate, as delineated by the American Bar Association, "[d]efense counsel or counsel's agents should seek to interview all witnesses, including seeking to interview the victim or victims, and should not act to intimidate or unduly influence any witness." Am. Bar Ass'n, Criminal Justice Standards for the Defense Function 4-4.3 (4th ed. 2017).

That said, a defendant's right to effective assistance of counsel and pretrial investigation is not absolute. For example, this Court acknowledged in A.B. that the right to have defense counsel visit and investigate a crime scene is limited by the victim's privacy rights when the crime scene is the victim's home. 219 N.J. at 547 ("The right of the accused to a fair trial, and the right of a purported victim and her family to privacy must be balanced.").

2.

Apart from the right to effective counsel, the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution further guarantee a criminal defendant the right "to have

29

compulsory process for obtaining witnesses in his favor." The compulsory process right permits a defendant to call and examine witnesses as part of the defense. State v. Budis, 125 N.J. 519, 531 (1991).

Those same federal and state constitutional provisions also guarantee a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. "The right of confrontation is an essential attribute of the right to a fair trial . . . ." State v. Branch, 182 N.J. 338, 348 (2005); accord Pointer v. Texas, 380 U.S. 400, 403 (1965) (holding that the federal right to confront witnesses is "made obligatory on the States by the Fourteenth Amendment" because it is a "fundamental right" that is "essential to a fair trial") (quotation omitted).

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." State v. Castagna, 187 N.J. 293, 309 (2006) (quoting Maryland v. Craig, 497 U.S. 836, 845 (1990)). The four key elements of the right of confrontation are "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." Craig, 497 U.S. at 846; State v. Smith, 158 N.J. 376, 385 (1999).

Nearly a century ago, the Supreme Court of the United States recognized that asking a witness during cross-examination where that witness lives is important, so "that the witness may be identified with his community"; "independent testimony may be sought and offered of his reputation for veracity in his own neighborhood"; and "the jury may interpret his testimony in the light reflected upon it by knowledge of his environment." Alford v. United States, 282 U.S. 687, 691 (1931); see also N.J.R.E. 608 (permitting impeachment of credibility through opinion or reputation evidence relating to the witness's character for truthfulness). In this regard, the Supreme Court has observed that asking witnesses their names and addresses during cross-examination can be pivotal for determining their credibility:

> [W]hen the credibility of a witness is in issue, the very starting point in "exposing falsehood and bringing out the truth" through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation.
>
> [Smith v. Illinois, 390 U.S. 129, 131 (1968) (emphases added).]

The rights to confrontation and compulsory process "have been aptly characterized as 'opposite sides of the same coin' because each confers the same fundamental right to elicit testimony favorable to the defense before the trier of fact." State v. Garron, 177 N.J. 147, 169 (2003).

31

A defendant's rights to confrontation and compulsory process are not absolute. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985); see also United States v. Owens, 484 U.S. 554, 560 (1988) ("[S]uccessful cross-examination is not the constitutional guarantee."). The right to confrontation and compulsory process "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process,' such as established rules of evidence and procedure designed to ensure the fairness and reliability of criminal trials." Garron, 177 N.J. at 169 (quoting Chambers v. Mississippi, 440 U.S. 284, 294 (1973)).

In general, trial judges "retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, . . . [or] the witness' safety." Budis, 125 N.J. at 532 (first two omissions in original) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). For example, the Supreme Court in Alford recognized that trial judges have discretion to limit cross-examination if it invades the witness's constitutional rights or merely seeks to harass, annoy, or humiliate the witness. 282 U.S. at 694. Limits may also be appropriate if asking for a witness's address "tend[s] to endanger the personal safety of the witness." Smith, 390

32

U.S. at 133-34 (White, J., concurring); accord McGrath v. Vinzant, 528 F.2d 681, 683-85 (1st Cir. 1976); United States v. Alston, 460 F.2d 48, 52 (5th Cir. 1972); United States v. Saletko, 452 F.2d 193, 195-96 (7th Cir. 1971).

Recognizing such limits, the Appellate Division has held that when a cooperating witness's safety is threatened, "the interests of the State and defendants can both be accommodated short of ordering disclosure of [the witness's] current name and address in open court." State v. Postorino, 253 N.J. Super. 98, 108 (App. Div. 1991). Although the appellate court in Postorino deferred to the trial judge's discretion, it recommended that the trial court conduct an in camera proceeding to determine whether the defendants had enough background information on the witness to effectively cross-examine and impeach him without his name and address. Ibid. The court directed that if the name and address were necessary, they should be disclosed to only defense counsel and defense investigators pursuant to a protective order. Id. at 108-09.

### 3.

The Fourteenth Amendment's Due Process Clause declares that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In construing that right, this Court has observed that "allowing a defendant to forage for evidence without a

33

reasonable basis is not an ingredient of either due process or fundamental fairness." R.W., 104 N.J. at 28. However, in assuring due process, "mere access to the courthouse doors" is not sufficient. Ake v. Oklahoma, 470 U.S. 68, 77 (1985). For example, due process generally requires the State "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987); see also Brady v. Maryland, 373 U.S. 83, 87 (1963) (prohibiting a prosecutor from concealing such evidence when it is requested).

The Appellate Division has observed that the Due Process Clause gives defendants the right of "access to adverse witnesses during the investigation phase of the defense." Blazas, 432 N.J. Super. at 340. Even so, because a witness has the "absolute and personal right to either grant or deny" a pretrial interview, id. at 346 (quoting State v. Boiardo, 172 N.J. Super. 528, 532 (Law Div. 1980)), "the protected [due process] right is the opportunity for pretrial access; it is not a guarantee of pretrial access," id. at 343.

As the Appellate Division stressed in Blazas, a witness's decision must be a personal one; any prosecutorial "interference with a witness's decision to grant or deny an interview to the defense . . . deprives a defendant of his right to present a complete defense." Ibid. That is because "witnesses . . . to a crime are the property of neither the prosecution nor the defense." State v.

34

Martinez, 461 N.J. Super. 249, 279 (App. Div. 2019) (quoting Gregory v. United States, 369 F.2d 185, 188 (D.C. Cir. 1966)). "Both sides have an equal [due process] right, and should have an equal opportunity, to interview them." Ibid. (emphasis omitted) (quoting Gregory, 369 F.2d at 188).

IV.

We distill from the foregoing authorities several guiding principles for addressing situations such as the present case, in which sexual assault victims express a desire not to be interviewed and to not have their residential address disclosed to a defendant or defendant's counsel.

- Under the Sexual Assault Victim's Bill of Rights, the Legislature has singled out victims of sexual assault as deserving heightened protections, including the specific right to "choose whether to participate in any investigation of the assault." N.J.S.A. 52:4B-60.2.

- Under the Crime Victim's Bill of Rights, the victim has the right to be protected from "intimidation, harassment or abuse" by the defendant or anyone acting on the defendant's behalf. N.J.S.A. 52:4B-36(c).

- Under the Victims' Rights Amendment, the victim has a constitutional right to be "treated with fairness, compassion and respect." N.J. Const. art I, ¶ 22.

35

- A court evaluating a prosecutor's motion under <u>Rule</u> 3:13-3(e) for a protective order seeking to withhold a sexual assault victim's address must weigh those formidable interests against the criminal defendant's own constitutionally based interests.

- As was rightly noted in <u>Blazas</u>, the decision to participate in or decline an interview with the defense team must be made by the victim-witness. 432 N.J. Super. at 343. It should not be dictated by the prosecutor or coaxed by the prosecutor or the defense.

With those principles in mind, we hold that, going forward, the following procedures and considerations apply when a prosecutor seeks to withhold from discovery a sexual assault victim's address.[4] We offer this framework in an effort to balance the opposing constitutional and statutory interests at stake, and to provide greater content to our pertinent court rules.

---

[4] This Court often has delineated procedures and considerations to guide the bench and bar in future cases, beyond simply resolving the fact-based outcome of an individual appeal. We have particularly done so in criminal law opinions, consistent with the Court's supervisory role in the administration of criminal justice and its role as a guardian of constitutional rights. <u>See, e.g.</u>, <u>State v. Carrion</u>, 249 N.J. 253, 273 (2021) (prospectively adopting notice-and-demand procedures for the presentation of a State witness to testify about the search of a firearms database); <u>State v. Henderson</u>, 208 N.J. 208, 288-91 (2011) (prescribing multiple non-codified factors and procedures to guide eyewitness identification testimony); <u>State v. Slater</u>, 198 N.J. 145, 157-62 (2009) (prescribing four factors to guide the permissible withdrawal of guilty pleas).

36

See, e.g., Scoles, 214 N.J. at 260-62 (setting forth a stringent discovery protocol for requests by defendants under Rule 3:13-3 for access to images in child pornography cases).

In order to withhold the sexual assault victim's address, the prosecution must move for a protective order under Rule 3:13-3(e). The motion must be supported by a sworn statement[5] from the victim attesting the victim does not want the address disclosed to the defendant or defense counsel. No further elaboration is necessary to initiate the motion process.[6]

If such a motion is filed, the defense may file a response with the court expressing reasons why a protective order should be denied and, in particular, why the defense needs the victim's address. The trial court may permit a reply by the prosecutor. The court shall then proceed to consider the matter, either on the papers or with oral argument if requested by counsel or directed by the court.

---

[5] We recognize that Rule 3:13-3(e)(2), as written, does not require the statement to be based on personal knowledge or sworn, but we add these requirements in furtherance of the principles we have noted above to accommodate a criminal defendant's rights. See also R. 1:6-6 (generally requiring "facts not appearing of record or not judicially noticeable" to be supplied "on affidavits made on personal knowledge"); N.J.R.E. 602 (requiring that non-expert witnesses possess personal knowledge). Simply put, the prosecutor can't speak for the victim.

[6] For sensitive materials, the court has discretion to inspect the victim's submission and seal it. See R. 3:13-3(e)(2).

If the defense asserts it wants the address, among other things, for the purpose of contacting and interviewing the victim, the court shall then consider various "supervised pathway" options. These options are designed to assure that the victim's decision is personal and also that the victim has been made aware of the defense's reasons for wanting the address and to make contact. The supervised pathway options include, but are not limited to:

(1) <u>Written Defense Request</u>. Allowing the defense to submit to the court a written request seeking the victim's assent to an interview, which the court may permit to be conveyed to the victim through the prosecutor or through court staff. The written request may be in the form of a letter or other document;

(2) <u>In Camera Interview</u>. The judge conducting an in camera recorded video or telephone interview with the victim to verify that the victim has been furnished with the defense's request and to determine whether the victim still desires to refrain from an interview and have the address kept confidential;

(3) <u>Limited Telephone or Video Call</u>. With advance notice to the victim, allowing the defense to speak with the victim, with or without the prosecutor present in the court's discretion, by telephone or by remote video. This call would be strictly for the limited purpose of elaborating why the defense wishes to conduct an interview;

38

(4) Further Court-Devised Options. Devising other options that fairly balance the victim's rights to refrain from participation against the defendant's rights to prepare a defense of the case.

After implementing one or more of those options, the court shall rule on whether good cause for a protective order has been shown under Rule 3:13-3(e)(1), and, if so, what court-imposed restrictions or conditions shall be observed.

In fashioning a protective order under these procedures, the trial court shall accord heavy weight to the sexual assault victim's interests in having solitude and privacy at that victim's residence in the wake of a highly traumatic experience. The home can be a place of refuge for a victim.

Our jurisprudence has long respected the heightened protections of privacy and solitude in one's dwelling. See, e.g., State v. Legette, 227 N.J. 460, 472 (2017) (noting the "special status" of one's home and the right to be free from warrantless searches and seizures) (quoting State v. Johnson, 193 N.J. 528, 553-54 (2008)); Murray v. Lawson, 138 N.J. 206, 225 (1994) (restricting the constitutionally allowable distance of picketers from a private residence, and noting the well-settled public policy and significant governmental interest "favoring protection of residential privacy"). Those principles safeguarding one's privacy in a dwelling are consistent with the

various provisions noted above that shield a victim's address or location.  See

N.J.S.A. 2A:82-46(a); N.J.S.A. 2C:14-12(c); N.J.S.A. 2C:14-13 to -21.

Accordingly, there shall be a presumption that, if the defense is allowed

by the court to obtain the address to enable contact with the victim, its

investigators shall not appear at the victim's residence without the victim's

advance consent and court approval.  This "home-is-off-limits" presumption

can be overcome only if the defense demonstrates to the court an exceptional

and compelling need to permit such contact.

In the rare instance in which the court finds the presumption is

overcome, it shall specify within the protective order reasonable limitations on

the time, place, and manner of such at-home contact by the defense team.  The

defense may not harass the victim.  See, e.g., N.J.S.A. 52:4B-36(c).  And the

victim always retains the right under N.J.S.A. 52:4B-60.2(c)(7) to decline to

participate in an investigatory defense interview at any time.[7]

In prescribing this framework, we do not presume that prosecutors,

defense attorneys, or their respective investigators and staff will act

unprofessionally.  These are prophylactic measures designed to protect the

---

[7]  We decline to address what restrictions may pertain when the defense
obtains the victim's address through other means.  Our holding is limited to
the prosecution's request for a protective order to withhold the address in
pretrial discovery.

40

vital interests of sexual assault victims while simultaneously respecting a criminal defendant's constitutional rights. They are intended to prevent troublesome conduct before it may occur.

V.

Having set forth the framework, we end with a disposition of the present appeal. We conclude this matter must be remanded to the trial court for further proceedings. Neither the ruling of the trial court nor that of the Appellate Division sufficiently addresses the competing interests we have explored in this opinion.

The trial court's ruling does not explicitly discuss a sexual assault victim's codified rights under the VRA, CVBR, or SAVBR. It could be more attentive to the psychological, non-physical trauma experienced by such victims. Also, the trial court does not impose any reasonable conditions on defense counsel's access to the victim at her residence. On the other hand, the appellate ruling does not allow for any process, as we have outlined here, to verify the victim's actual informed refusal to be interviewed by the defense team or to divulge her address. Both decisions -- issued without this Court's guidance -- are incomplete in those respects. A more fulsome balancing of the competing interests is warranted.

41

As noted above, we agree with defendant's concerns about the hearsay nature of the prosecutor's certification about D.C.'s desire to be left alone. However, we are mindful that the "statement" element of Rule 3:13-3(e) has not been construed until today to require a non-hearsay attestation from a sexual assault victim. In all fairness, the prosecution should have leave to renew its motion with support complying with our opinion. We remand this case to enable that process.

If a proper motion is filed by the State, then the trial court shall carry out the steps we have described above. Also on remand, the defense may present argument to the motion judge, which it had not previously made, concerning the alleged utility of a victim's address for investigative purposes other than pursuing an interview, along the lines, for example, of the points raised by the ACLU. We express no views about the facts of this particular case or how the trial court should rule on remand.

## VI.

For the reasons set forth above, we vacate the judgment of the Appellate Division and remand for further proceedings consistent with this opinion.

CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, and FASCIALE; and JUDGE FISHER (temporarily assigned) join in JUDGE SABATINO's opinion.

42